UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JASON JOHNSON, individually and on           Case No. 23-CV-1780 (PJS/LIB)
behalf of all others similarly situated,

    Plaintiff,

v.                ORDER

NORTH MEMORIAL HEALTH CARE,

    Defendant.

---

Reena I. Desai and Caitlin L. Opperman, NICHOLS KASTER, PLLP, for plaintiff.

Lukas S. Boehning, Joseph M. Sokolowski, and Nicole M. Moen, FREDRIKSON & BYRON, P.A., for defendant.

Plaintiff Jason Johnson worked for defendant North Memorial Health Care ("North Memorial") as an emergency medical technician ("EMT") from April 2002 to April 2023.  Johnson brings claims against North Memorial under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21 et seq., and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101.  Johnson alleges that North Memorial failed to pay overtime as required by the FLSA and Minnesota law and further failed to pay the minimum wage required by Minnesota law.

This matter is before the Court on (1) Johnson's motion to certify a Minnesota class for the state-law claims, and (2) North Memorial's motion to decertify the FLSA

claims.  For the reasons that follow, Johnson's motion is granted, and North Memorial's motion is denied.

## I.  BACKGROUND

North Memorial is a nonprofit corporation that provides ambulance services throughout Minnesota and western Wisconsin.  Compl. ¶ 15; Answer ¶ 15; Wagner Dep. 13.  As relevant to this case, the ambulance services are divided into six regions, with each region consisting of one or more bases from which crews respond to calls.[1] Wagner Dep. 23–24; ECF No. 124 at 9.  During the class period, a director of out-state operations oversaw all six regions.  Wagner Dep. 9–10.  Each region had a manager who reported to the director and one or more supervisors under each manager who supervised the EMTs and paramedics.  Wagner Dep. 10, 23–28.

As an EMT, Johnson worked as part of an ambulance crew performing medical transportation and patient-care services.  Wagner Dep. 30–31; Plf.'s Ex. 2 (EMT job description).  Ambulance crews typically consisted of an EMT and a paramedic, both of whom had the same basic job, with paramedics having more advanced skills and patient-assessment responsibilities.  Wagner Dep. 30–31.  For ease of reference, the

---

[1]In its briefing, North Memorial states that there are five regions, but also cites to a table listing six.  ECF No. 124 at 4, 9.  Testimony seems to indicate that there are at least six, *see* Wagner Dep. 23–24, although the variable manner in which witnesses refer to the regions makes it somewhat difficult to tell.  *See also* Plf.'s Ex. 3 (organization chart listing seven regions (including Princeton, which did not have on-call time, *see* ECF No. 115 at 5 n.2)).

Court will follow the parties' lead in referring to the EMTs and paramedics together as "EMTs."

During the time period relevant to this case, North Memorial EMTs worked both "primary" hours and "on-call" (also called "off-premise") hours.[2]  Wagner Dep. 32–35; S. Johnson Dep. 44–45.  In Minnesota, North Memorial paid primary hours at the EMT's regular hourly rate and paid $4.00 per hour for on-call hours.  Wagner Dep. 101.  North Memorial also excluded on-call hours for purposes of calculating overtime pay. Wagner Dep. 104–05.

North Memorial expected its on-call EMTs to respond to calls within eight minutes.  Wagner Dep. 50; Cordes Dep. 37; Nelson Dep. 40; Mayer Dep. 35–36; S. Johnson Dep. 52.  Specifically, this policy meant that, within eight minutes of being notified, an EMT had to be in the ambulance, appropriately dressed (either in uniform or similar clothes), with garage doors open, and en route.  J. Johnson Dep. 51, 111; Wagner Dep. 63; McConnell Dep. 42, 45–47, 51, 53, 55; Cordes Dep. 37, 51, 65, 73–74, 90; Mayer Dep. 35–36, 38–39; Wagner Dep. 63.  While on call, EMTs were not permitted to consume alcohol or other mind-altering substances (legal or illegal).  Mayer Dep. 55; McConnell Dep. 47.

_____

[2]Two locations in Minnesota did not schedule EMTs for on-call time, and EMTs who worked at those locations are not part of the proposed Rule 23 class.  ECF No. 115 at 5 n.2.

The hours that on-call EMTs spent responding to calls were treated and paid as primary hours, and EMTs were guaranteed a minimum of two hours' primary pay for all calls (regardless of how long the call took) and a one-hour minimum if a call was canceled before the EMT was en route.  Wagner Dep. 101–04; Mayer Dep. 67.

## II.  ANALYSIS

Both the FLSA and Minnesota law require an employer to pay one-and-a-half times an employee's regular rate of pay for any hours that the employee works in excess of a specified number of hours per week (40 under the FLSA, and 48 under Minnesota law).  *See* 29 U.S.C. § 207(a)(1); Minn. Stat. § 177.25, subd. 1.  Minnesota law also sets an hourly minimum wage that is higher than the federal minimum.  *Compare* Minn. Stat. § 177.24, subd. 1(b), (f) (2022), *with* 29 U.S.C. § 206.

As noted, Johnson brings claims under these provisions, contending that North Memorial failed to pay overtime in violation of both the FLSA and Minnesota law and failed to pay minimum wage in violation of Minnesota law.  Both sets of claims turn on whether North Memorial should have treated EMTs' on-call time as working time.

### A.  Motion to Decertify FLSA Collective Action

The FLSA permits "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring an action to recover unpaid overtime compensation.  29 U.S.C. § 216(b).  However, "[n]o employee shall be a

party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* District courts have discretion to facilitate the giving of notice to employees who may be interested in joining a § 216(b) action, a process that has come to be known as "conditional certification." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171–73 (1989); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citations omitted)).

Magistrate Judge Leo I. Brisbois conditionally certified an FLSA collective action in this case, after which approximately 120 employees opted to join. North Memorial now moves to decertify, arguing that the opt-in plaintiffs are not "similarly situated" under § 216(b) because the issue of whether North Memorial should have treated the EMTs' on-call time as working time depends on facts and circumstances that are unique to each EMT.

The FLSA does not set forth any standard for determining whether time spent on call should be counted as work time. In *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the Supreme Court determined that this inquiry "involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of

the working agreement by conduct, consideration of the nature of the service, and its

relation to the waiting time, and all of the surrounding circumstances." *Id.* at 137; *see*

*also Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("Whether time is spent

predominantly for the employer's benefit or for the employee's is a question dependent

upon all the circumstances of the case.").  Roughly speaking, the question turns on the

extent to which the employer's on-call policies interfere with the employees' ability to

engage in personal pursuits.  *See Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 916 (8th

Cir. 1991) ("Time spent away from an employer's premises may constitute compensable

hours of work if conditions imposed by an employer restrict the employee from using

the time for personal pursuits.").

Here, the EMTs were all subject to the same policies that, they contend,

significantly restricted their ability to spend on-call time on personal pursuits.  In

particular, the EMTs were required, while on call, to be en route to calls within eight

minutes of receiving a notification; to be in uniform or similar appropriate dress when

responding to calls; and to refrain from using alcohol or other mind-altering substances

while on call.  Likewise, the EMTs were all subject to the same allegedly illegal policies

in that they were all paid less than minimum wage for on-call hours (except when

responding to calls) and those hours were not included in determining their entitlement

to overtime pay.  All of these commonalities suggest that collective adjudication is

appropriate in this case. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) ("Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" (citation omitted)), *aff'd and remanded*, 577 U.S. 442 (2016).

North Memorial highlights variations in the EMTs' individual experiences of being on call, contending that those experiences differ too much to allow a collective action to proceed. Indeed, North Memorial seems to contend that the nature of the inquiry required under *Skidmore* and *Armour* precludes collective treatment of claims concerning whether an employee's time should be counted as work. That is obviously not true, however, as there are multiple Eighth Circuit cases arising out of collective actions in which this issue was litigated. *See, e.g.*, *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 724 (8th Cir. 2001) (on-call time); *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 533 (8th Cir. 1993) (meal breaks); *Cross*, 938 F.2d at 914 (on-call time).

*Cross* is a good example of the type of collective action that North Memorial contends is not possible under *Skidmore*.[3] The plaintiffs were a group of approximately

---

[3]North Memorial contends that *Cross* "was not a class action." ECF No. 124 at 29. That is technically true, but ignores the fact that the case proceeded as a collective action under the FLSA. (The caption lists approximately 100 plaintiffs.) Notably, on appeal after remand, the Eighth Circuit affirmed a jury verdict in the plaintiffs' favor and described the case as "a class action suit . . . filed on behalf of ninety-nine Forestry

(continued...)

100 forestry employees who were required to be on call to respond to fires. *Cross*, 938 F.2d at 914. The district court granted summary judgment to the employer, finding that the employees' ability to pursue personal activities was "'only slightly burdened.'" *Id.* at 916. The Eighth Circuit reversed, finding that "[t]he record in this case contains evidence of significant interference with the employees' private activities." *Id.* Given the number of plaintiffs and the nature of their employment, the employees' ability to make use of their on-call time for personal activities almost certainly varied by individual in much the same way that the experiences of North Memorial's EMTs varied. Yet the Eighth Circuit found those variations to be no barrier to collective adjudication. Instead, the Eighth Circuit focused on the employer's policies that applied to all of the employees, *id.* at 916–17, and, after remand, affirmed a jury verdict in the employees' favor, *see May v. Ark. Forestry Comm'n*, 993 F.2d 632, 634 (8th Cir. 1993).

---

[3](...continued)
Rangers ('employees') employed by the Arkansas Forestry Commission." *May v. Ark. Forestry Comm'n*, 993 F.2d 632, 635 (8th Cir. 1993). Despite the court's use of the term "class action," it appears that no Rule 23 class was certified. But it also appears that there would have been no reason to certify a Rule 23 class, as the plaintiffs asserted only FLSA claims, which (as noted) were collectively litigated.

*Reimer* is another example of a collective action about the compensability of on-call time.[4]  The case involved 136 plaintiffs, *see Wisnewski v. Champion Healthcare Corp.*, No. CIV. A3-96-72, 2000 WL 1474414, at *2 (D.N.D. Jan. 11, 2000), *aff'd sub nom. Reimer v. Champion Healthcare Corp.*, 258 F.3d 720 (8th Cir. 2001), and the Eighth Circuit's opinion makes clear that there were factual variations among them.  For example, the Eighth Circuit noted that "only about a quarter of the appellants were actually called in more than once during their scheduled on-call times."  *Reimer*, 258 F.3d at 725.  And neither the Eighth Circuit nor the district court found it necessary to delve into such particularized details as exactly how far each plaintiff lived from the defendant hospital or precisely which personal activities each plaintiff chose to pursue while on call.

---

[4]North Memorial contends that *Reimer* is distinguishable because the employees' claim was based solely on a contractual theory, which in turn was based on the employer's policy manual.  ECF No. 124 at 29.  This is not an accurate summary of the case.  True, the district-court opinion makes clear that, after the district court identified various weaknesses in the plaintiffs' case, the plaintiffs attempted to pivot to a novel contractual theory while disclaiming reliance on the extent to which their ability to engage in personal pursuits was restricted.  *See Wisnewski v. Champion Healthcare Corp.*, No. CIV. A3-96-72, 2000 WL 1474414, at *4–5 (D.N.D. Jan. 11, 2000); *aff'd sub nom. Reimer v. Champion Healthcare Corp.*, 258 F.3d 720 (8th Cir. 2001).  But the district court declined to address the plaintiffs' contractual theory and instead examined all of the surrounding facts and circumstances to determine whether the employees spent their on-call time predominantly for the employer's benefit.  *Id.* at *5 ("Even if the court assumes, which it does not, that employment contracts existed, the on-call time must still be performed predominately for the benefit of the employer to be considered work."); *see also Reimer*, 258 F.3d at 724–26 (discussing various factors, including the employees' ability to engage in personal pursuits during on-call time and how often the plaintiffs were called in to work).

Instead, the district court discussed the impact of the employer's policies on the

employees as a group, *see Wisnewski*, 2000 WL 1474414, at *5, and the Eighth Circuit

"commend[ed] the district court's practical approach to this issue, " *Reimer*, 258 F.3d at

725.

Consequently, the relatively minor factual variances among plaintiffs in this

case—such as variations in the number of calls to which each plaintiff responded, the

amount of time each plaintiff spent responding to them, or the exact personal activities

that each plaintiff chose to pursue while on call—does not preclude collective treatment.

Nor does the Court regard other differences among the EMTs or the bases at which they

worked as particularly significant in the context of this case.  The dominant factor at

issue—which is similar across all plaintiffs—is the eight-minute response time.  So, for

example, the fact that some EMTs chose to live close to their base and spent their on-call

shifts at home, while others chose to live farther away and spent their on-call shifts at or

near their bases, does not mean that the EMTs were not similarly situated.  Instead,

these are simply the different ways that employees adapted to North Memorial's eight-

minute policy and the geographic restrictions that the policy imposed as a practical

matter.

North Memorial contends that enforcement of the eight-minute response time

varied from region to region and base to base.  The record shows, however, that all of

the bases had similar approaches to the eight-minute requirement—namely, that EMTs were expected to meet it, that there was some limited tolerance for minor deviations, and that significant deviations would be addressed by talking to the offender.  Wagner Dep. 50–51, 66–68; S. Johnson Dep. 62; Mayer Dep. 48; McConnell Dep. 42, 52, 92–94; Nelson Dep. 40, 43–45, 69; Cordes Dep. 89–91; J. Johnson Dep. 141–42.  In addition, the record suggests that managers and supervisors did not have much occasion to raise the issue because EMTs usually met the requirement.  Cordes Dep. 89–90; Fosse Dep. 105–06; J. Johnson Dep. 146–47; Nelson Dep. 39.  North Memorial points to testimony that the eight-minute requirement was ignored or at least considered less important for non-emergency patient-transfer calls, but this, too, seems to have been true across the organization.  Wagner Dep. 36, 63–64; Mayer Dep. 51; Nelson Dep. 70–71; Cordes Dep. 91.  (It is also worth noting that the majority of callbacks were related to emergencies. Nelson Dep. 70; Cordes Dep. 92.)

Likewise, while there were some regional variations in scheduling practices, all EMTs received their schedules at least a month in advance.  Wagner Dep. 77–78.  This appears to have given EMTs the practical ability to trade on-call shifts as needed; the record indicates that EMTs generally had reasonable flexibility in doing so.  Wagner Dep. 77–78; J. Johnson Dep. 72–77; Mayer Dep. 61–62; Cordes Dep. 53–57;  Fosse Dep. 33–34, 39, 41.  Similarly, while some EMTs used pagers and others were notified of calls

via their personal cell phones, nothing in the record suggests that this difference significantly affected most EMTs' use of on-call time.[5]  Moreover, EMTs also had radios (which were necessary to respond to calls and which were also capable of receiving the initial notification).  Wagner Dep. 42; Nelson Dep. 63–64, 66; Cordes Dep. 66; S. Johnson Dep. 56; Mayer Dep. 36.

North Memorial next contends that collective adjudication would deprive it of what it calls its "consent-based defense," noting that some EMTs expressly or implicitly agreed to the on-call component of the position along with the various restrictions that it entailed, including the eight-minute response time and the less-than-minimum hourly wage.[6]  ECF No. 124 at 30.  North Memorial overstates the extent of any variance in the proof on this issue, however.  Of the plaintiffs who were deposed, two testified that they could not remember if they knew about North Memorial's on-call policies before accepting the position, J. Johnson Dep. 24–25, Fosse Dep. 23–26, and the remaining four testified that they knew about the policies before accepting, Reque Dep. 27–28, Cole Dep. 17–19, Benson Dep. 25–26, Hoy Dep. 20–22.  North Memorial also submitted

---

[5]Johnson testified that the radios had poor reception in Park Rapids, which limited his ability to go into certain buildings.  Johnson Dep. 51.  EMTs in that region could choose to receive notifications on their personal phones, however, which would have mitigated this problem.  Mayer Dep. 9–10, 36–37.

[6]The Court agrees with Johnson that this is not a defense; instead, the parties' agreements are part of the totality of the circumstances for the jury to consider.  *See Skidmore*, 323 U.S. at 136–37.

written employment agreements for 12 of the opt-in EMTs, 11 of whom signed

employment agreements setting forth on-call policies that were as strict or stricter than

the challenged policies. Def. Ex. 3. The twelfth employee's agreement specified a

response time of 10 minutes. *Id*. The date range of these sample agreements, spanning

from 1993 through 2001, strongly suggests that it was North Memorial's regular

business practice to enter into written agreements that included this information. *See*

*also* Nelson Dep. 40 (EMTs were told of on-call hours and the eight-minute response

time before being hired). Moreover, neither Johnson nor any of the opt-in plaintiffs

seem to dispute that they were informed of North Memorial's on-call requirements

before accepting employment. Whether and to what extent informing the plaintiffs of

the allegedly unlawful policies provides a defense to North Memorial can be litigated

collectively.

Finally, North Memorial contends that fairness and procedural considerations

preclude collective adjudication. In particular, North Memorial argues that all of the

approximately 120 opt-in plaintiffs would need to testify. The Court does not agree. In

*May*, the Eighth Circuit affirmed a jury verdict in favor of approximately 100 opt-in

plaintiffs. *May* does not explicitly describe the nature of the evidentiary presentations,

but given that the trial lasted a little over a week, the parties must have relied on

representative evidence. *See May*, 993 F.2d at 635. The Court is confident that, like the

parties in *May*, the parties in this case will be able to winnow their cases down to a

reasonable number of representative witnesses.  This further serves the purpose of

efficiency, as holding over 100 separate, largely duplicative trials would needlessly

consume judicial resources.

For these reasons, North Memorial's motion to decertify the FLSA collective

action is denied.

### B.  Motion to Certify State-Law Claims

Johnson seeks to certify his Minnesota claims for class treatment under Fed. R.

Civ. P. 23.  The proposed class is defined as follows:

> All persons who have worked as a Paramedic or Emergency
> Medical Technician for North Memorial Health Care in
> Minnesota at any time between June 13, 2020, and April 24,
> 2022, and were subject to North Memorial's policy of paying
> on-call (or off-premise) hours at a subminimum wage rate
> and omitting hours worked for purposes of calculating
> overtime compensation.

ECF No. 119 at 1.

"To certify a class, a district court must find that the plaintiffs satisfy all the

requirements of Federal Rule of Civil Procedure 23(a) and one of the subsections of

Rule 23(b)."  *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984 (8th Cir. 2021).  "District

courts must engage in a 'rigorous analysis' to determine whether the requirements of

Rule 23 have been satisfied."  *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir.

2018) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  Plaintiffs bear the

burden of showing that a class should be certified and that the requirements of Rule 23

are met.  *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

1.  Rule 23(a)

The four threshold requirements of Rule 23(a) are (1) that the class "is so

numerous that joinder of all members is impracticable"; (2) the existence of questions of

law or fact common to the class; (3) typicality of the representative party's claims or

defenses; and (4) that the representative party and class counsel will "fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *Ebert v. Gen. Mills,

Inc.*, 823 F.3d 472, 477 (8th Cir. 2016).  North Memorial does not dispute that the

prerequisites of numerosity, typicality, and adequacy are met.  Having examined the

record, the Court agrees.

The parties estimate that the proposed class consists of approximately

230 people, which is more than sufficient to meet the numerosity requirement.  *See In re

Wholesale Grocery Prod. Antitrust Litig.*, No. 09-MD-2090 ADM/TNL, 2016 WL 4697338, at

*7 (D. Minn. Sept. 7, 2016) ("The Eighth Circuit has affirmed the certification of classes

with as few as 20 members."); *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn.

2007) ("In general, a putative class exceeding 40 members is sufficiently large to make

joinder impracticable.").

With respect to typicality, Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "Typicality 'is fairly easily met so long as other class members have claims similar to the named plaintiff.'" *Postawko*, 910 F.3d at 1039 (citation omitted). Johnson's claims are similar to those of the class, as they were all subject to the same allegedly illegal policies that form the basis of this lawsuit—namely, the subminimum wage for on-call time and the failure to include on-call hours in determining whether they earned overtime. *See id.* ("Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." (citation omitted)).

As to adequacy, "[t]he focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982). Class counsel is well qualified, both Johnson and his counsel have vigorously prosecuted this action, and there is no indication that Johnson has any interests adverse to the class.

That leaves the commonality requirement. To satisfy Rule 23(a)(2)'s commonality requirement, the "claims must depend upon a common contention" that is

"of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[F]or purposes of Rule 23(a)(2) even a single common question will do."  *Id.* at 359 (cleaned up).  As discussed above, the issue of whether the EMTs' on-call time should be considered working time is capable of collective adjudication in this case, and the commonality requirement is therefore met.

*b.  Rule 23(b)(3)*

Plaintiffs seek class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3) specifies certain factors for courts to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  Rule 23(b)(3) is "framed for situations in which class-action treatment is not as clearly called for" and "allows class certification in a much wider set of circumstances but with greater procedural protections."  *Wal-Mart Stores*,

*Inc.*, 564 U.S. at 362 (cleaned up).  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation and quotation marks omitted).  "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

As explained above, the Court has already determined that the question whether the EMTs' on-call time is working time is capable of classwide adjudication.  That is the dominant issue in this case.[7]  Moreover, it appears that the only other major issue—damages—is likely to be resolved by reference to undisputed employment

---

[7]The parties dispute whether Minnesota law is the same as the FLSA with respect to on-call time, with Johnson arguing that Minnesota law is more expansive in coverage.  *See Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 177 (Minn. 2021) (noting that "a distinction between being able to use one's time effectively or not, while working on call, is an issue that has not been addressed by Minnesota courts" and holding that the district court erred by "relying on federal cases with similar, but distinct, fact patterns to resolve a genuine material issue of fact (i.e., whether Hagen could use her time effectively for her own purposes)").  The Court need not resolve this issue in order to rule on Johnson's class-certification motion, however.  Even if North Memorial is correct that Minnesota law mirrors the FLSA, the Court has already found the question of the compensability of on-call time to be a common question under the FLSA.

records.[8]  Class adjudication is also superior, given that the alternative would be over a

hundred individual lawsuits.  It is true that the amount of available damages gives each

class member some interest in individual control.  That said, each potential class

member has most likely already received personal notice of this lawsuit after it was

conditionally certified under the FLSA, and the Court is not aware of any other lawsuits

brought by a class member.  The Court therefore grants Johnson's motion for class

certification.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

---

[8]In its briefing, North Memorial did not contend that determining damages would present any barrier to class certification.  At oral argument, however, North Memorial argued that, even if it is found liable, it would be entitled to litigate which portions of each shift that each class member worked would be compensable.  Specifically, North Memorial contended that it would be entitled to exclude any time that each class member spent actually engaged in personal pursuits.  North Memorial pointed to *Cross* and *May*, in which the jury awarded the plaintiffs eight hours per week of back pay despite the fact that they were on call continuously throughout the week.  *Cross*, 938 F.2d at 914; *May*, 993 F.2d at 635.

The Court does not read *May* as requiring such an approach.  *May* does not discuss how backpay was calculated, but the award of exactly eight hours per week for each and every plaintiff is not consistent with an approach in which an employer is entitled to exclude any on-call time actually spent on personal pursuits.  Moreover, an hour counts as work time when an employee is sufficiently *restricted* in his personal pursuits; it is not necessary that it be *impossible* for the employee to engage in any personal pursuit whatsoever.

1.    Plaintiffs' motion for class certification [ECF No. 113] is GRANTED.

2.    Defendant's motion to decertify [ECF No. 122] is DENIED.

3.    The Court certifies the following class under Fed. R. Civ. P. 23(a) and

      (b)(3):

             All persons who have worked as a Paramedic
             or Emergency Medical Technician for North
             Memorial Health Care in Minnesota at any
             time between June 13, 2020, and April 24, 2022,
             and were subject to North Memorial's policy of
             paying on-call (or off-premise) hours at a
             subminimum wage rate and omitting hours
             worked for purposes of calculating overtime
             compensation.

4.    Plaintiff Jason Johnson is appointed as the class representative.

5.    The law firm of Nichols Kaster, PLLP, is appointed as class counsel.

6.    No later than 14 days after the date of this order, defendant shall produce

      to plaintiff a list of all individuals who fit the certified class definition with

      each individual's name, last-known address, last-known telephone

      number, dates of employment, and locations at which the employee

      worked as an EMT or paramedic, in an electronic, delimited, and

      importable format.

7.    The Court APPROVES the proposed class notice [ECF No. 116-29], including the proposed 45-day notice period, except that the first row of the table on page 1 should state as follows:

| | |
|---|---|
| **Do Nothing** | **Stay in this lawsuit. Await the outcome.**<br><br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement. But you will be bound by the outcome of this lawsuit, whether favorable or unfavorable to you, and you will give up any rights to sue North Memorial separately over the conduct at issue in this lawsuit. |

8.    No later than seven days after the Court approves the proposed class notice, class counsel must mail the notice to class members.

Dated:  June 20, 2025                    /s/ Patrick J. Schiltz
                                        Patrick J. Schiltz, Chief Judge
                                        United States District Court