# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jason Johnson, individually and on behalf of all others similarly situated, and the proposed Minnesota Rule 23 Class, <br><br> Plaintiff, <br><br> v. <br><br> North Memorial Health Care, <br><br> Defendant. | Case No. 23-cv-1780 (PJS/LIB) <br><br><br> **ORDER** |

Reena I. Desai and Caitlin L. Opperman, Nichols Kaster, PLLP, 4700 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Plaintiff.

Janet M. Dorr, Joseph M. Sokolowski, and Nicole M. Moen, Fredrikson & Byron P.A., 60 South Sixth Street, Suite 1500, Minneapolis, Minnesota 55402-4400, for Defendant.

SUSAN RICHARD NELSON, United States District Judge.

Plaintiff Jason Johnson worked for defendant North Memorial Health Care (North Memorial) as an emergency medical technician (EMT) from April 2002 to May 2023. Johnson and approximately 120 Opt-In Plaintiffs bring claims against North Memorial under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. In addition, on behalf of a Fed. R. Civ. P. 23 Class,[1] Johnson brings claims against North Memorial under the

---

[1] On June 20, 2025, the Court certified the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

> All persons who have worked as a Paramedic or Emergency Medical Technician for North Memorial Health Care in Minnesota at any time between June 13, 2020, and April 24, 2022, and were subject to North Memorial's policy of paying on-call (or off-

Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. § 177.21 et seq., and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101. Johnson alleges that North Memorial failed to pay overtime as required by the FLSA and Minnesota law and further failed to pay the minimum wage required by Minnesota law.

This matter is before the Court on Johnson's Motion for Partial Summary Judgment [Doc. 152] and North Memorial's Motion for Summary Judgment [Doc. 157]. For the reasons that follow, both motions are granted in part and denied in part. In particular, the Court grants Johnson's motion as to North Memorial's good-faith defense to liquidated damages under the FLSA, grants North Memorial's motion on the issue of willfulness, and denies the motions in all other respects.

## I.    BACKGROUND

North Memorial is a nonprofit corporation that provides ambulance services throughout Minnesota and western Wisconsin. (Compl. ¶ 15; Answer ¶¶ 14–15; Wagner Dep. 13–14.) As an EMT, Johnson worked as part of an ambulance crew performing medical transportation and patient-care services. (Wagner Dep. 30–31; Doc. 155-2 (EMT job description).) Ambulance crews typically consist of an EMT and a paramedic, both of whom have the same basic job, with paramedics having more advanced skills and patient-assessment responsibilities. (Wagner Dep. 30–31.)

---

premise) hours at a subminimum wage rate and omitting hours worked for purposes of calculating overtime compensation.

(Doc. 146 at 20.) Although the Class consists of both EMTs and paramedics, the Court follows the parties' practice of referring to Opt-In Plaintiffs and Class members collectively as "EMTs." (*Id.* at 2–3.)

During the time period relevant to this case, North Memorial EMTs worked both "primary" hours and "on-call" (also called "off-premise") hours.  (Wagner Dep. 32; S. Johnson Dep. 45.)  Typically, an EMT would work a 12-hour primary shift followed by a 12-hour on-call shift (or vice versa).  (Mayer Dep. 33.)  In Minnesota, North Memorial paid primary hours at the EMT's regular hourly rate and $4.00 per hour for on-call hours. (Wagner Dep. 101.)   North Memorial also excluded on-call hours for purposes of calculating overtime pay.  (Wagner Dep. 104–05.)  The hours that on-call EMTs spent responding to calls were treated and paid as primary hours, and EMTs were guaranteed a minimum of two hours' primary pay for all calls (regardless of how long the call took) and a one-hour minimum if a call was canceled before the EMT was en route.  (Wagner Dep. 103–04.)

As a general matter,[2] North Memorial's expectations for on-call EMTs included the following:  (1) EMTs had to be in the ambulance and en route within eight minutes of being called [Wagner Dep. 50, 63; McConnell Dep. 42]; (2) EMTs were required to refrain from consuming alcohol or other mind-altering substances [Mayer Dep. 55; McConnell Dep. 47]; and (3) EMTs had to be appropriately dressed (either in uniform or similar clothes) [S. Johnson Dep. 64–65; Nelson Dep. 61–62].

## II.    ANALYSIS

When reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, making no credibility determinations and

---

[2] As discussed below, the extent to which North Memorial enforced these policies is in dispute.

giving it the benefit of all reasonable inferences to be drawn from the record. *Cottrell v. Am. Fam. Mut. Ins.*, 930 F.3d 969, 971 (8th Cir. 2019). The Court will only grant a motion if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A.    Liability

The FLSA does not set forth any standard for determining whether time spent on call should be counted as work time.[3] In *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the Supreme Court determined that this inquiry "involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances." *Id.* at 137; *see also Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."). Roughly speaking, the question turns on the extent to which the employer's on-call policies interfere with the employees' ability to engage in personal pursuits. *See Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 916 (8th Cir. 1991) ("Time spent away from an employer's premises may constitute compensable hours of work if conditions imposed by an employer restrict the employee from using the time for personal pursuits.").

---

[3] The parties dispute whether the standard applicable under the MFLSA is the same as that under the FLSA (as North Memorial contends) or is instead more expansive in coverage (as Johnson contends). Because factual issues would preclude summary judgment even under a more-expansive standard, the Court need not resolve this issue at this time.

There is conflicting evidence concerning the extent to which North Memorial's on-call policies—in particular, the eight-minute response time—limited EMTs' personal activities. Johnson highlights evidence that the response time limited where EMTs could live; indeed, Johnson offers evidence that the majority of EMTs spent their on-call shifts at the station and could not go home unless they lived less than eight minutes away. (Cordes Dep. 48, 75; Cole Dep. 52; Fosse Dep. 85; Benson Dep. 45; Doc. 155-14 (March 2019 email from manager with attached map prohibiting EMTs who lived outside a specified area from spending their on-call shifts at home).) In addition, there is evidence that the eight-minute response time made it difficult for EMTs to engage in daily activities such as running errands, exercising, doing laundry, mowing, showering, caring for children, cooking, entertaining, going to movies and restaurants, and participating in outdoor recreational activities. (Cordes Dep. 113–16; Reque Dep. 90, 128–29; 139; Cole Dep. 130; Benson Dep. 118, 123–24; J. Johnson Dep. 50–51, 179–81; McConnell Dep. 56; Hoy Dep. 75, 102–04, 106–07, 113.). EMTs also attested that their activities were limited by the need to monitor their radios and text messages. (Doc. 57-1.) Finally, there is evidence that, on average and across locations, EMTs spent slightly under a third of their on-call time responding to calls. (Doc. 135 ¶ 16; *see also* Cordes Dep. 82.)

Citing evidence that it did not monitor response times, North Memorial argues that its eight-minute policy was not strictly enforced. (*See, e.g.*, McConnell Dep. 82.) Likewise, North Memorial points to evidence that EMTs were not required to be in uniform, but rather were simply asked to change into a North Memorial shirt if they had time. (Wagner Dep. 50–51.) North Memorial contends that EMTs had additional

flexibility in that they could swap or give away shifts.  (S. Johnson Dep. 79–80; Mayer Dep. 61–62; Cordes Dep. 56–57; Nelson Dep. 77–79.)  Most significantly, North Memorial offers testimony that EMTs were able to engage in a wide variety of everyday activities, including cooking, shopping, socializing, exercising, reading, working other jobs, sleeping, attending online classes, watching television, playing games, fishing, gardening, biking, dining out, and going for walks.  (Reque Dep. 86–89; Benson Dep. 46–48, 61, 90–92, 118; Hoy Dep. 69–71, 95–96; Cordes Dep. 116–18; McConnell Dep. 53; Fosse Dep. 111, 113–15; J. Johnson Dep. 64–65, 68–69, 148–50, 163; Cole Dep. 89, 113–15, 117–18; Mayer Dep. 114–120; S. Johnson Dep. 118.)  Relatedly, North Memorial points out that, as the EMTs all worked out of bases located in small towns, many EMTs were able to spend on-call time either at home or visiting friends and loved ones and had access to virtually all of their towns' amenities.  (Reque Dep. 79–81; Hoy Dep. 22, 60–62; Cole Dep. 54–55, 80–81; McConnell Dep. 42; Mayer Dep. 111–15; Fosse Dep. 77, 80; Cordes Dep. 119.)

Having reviewed the record, the Court finds that factual issues preclude summary judgment.  There is sharply conflicting evidence concerning the extent to which EMTs could pursue personal activities while on call.  In addition, a reasonable jury could agree with either side concerning how strictly North Memorial enforced the eight-minute response time, which is clearly the predominant restriction at issue in this case.

Even if there were no facts in dispute, the cases on which each side relies are distinguishable and do not dictate a ruling for either side as a matter of law.  The EMTs point to *Cross*, in which the Eighth Circuit reversed summary judgment in favor of the employer, *see Cross*, 938 F.2d at 917, and later affirmed a jury verdict in the employees'

favor, *see May v. Ark. Forestry Comm'n*, 993 F.2d 632, 634 (8th Cir. 1993).  The EMTs

highlight the ways in which the firefighters in *Cross* were subject to lesser restrictions: they

had 30 minutes to acknowledge and depart for calls, no requirement to arrive at the

emergency within a particular time, and could travel up to 50 miles away.  *Cross*, 938 F.2d

at 916–17.  There is a major distinction between *Cross* and this case, however: in *Cross*

the firefighters were on call every day, 24 hours per day.  *Id.* at 914 & n.3.

The EMTs also compare this case to *Renfro v. City of Emporia*, 948 F.2d 1529 (10th

Cir. 1991), in which the Tenth Circuit affirmed summary judgment in the employees'

favor.   *Renfro* is not controlling authority, however, and in any event is also

distinguishable.  While the firefighters in *Renfro* had 20 minutes to respond to calls, they

were called in an average of three to five times each shift and sometimes handled twelve

to thirteen calls in a day.  *Id.* at 1531–32.  The district court relied in particular on the

frequency of callbacks as a distinguishing factor.  *Id.* at 1532–33; *cf. Reimer v. Champion

Healthcare Corp.*, 258 F.3d 720, 724 (8th Cir. 2001) (affirming summary judgment for

employer where nurses had 20 minutes to respond to calls but were typically called in no

more than once per shift).

The cases on which North Memorial relies are similarly distinguishable.  In *Brekke

v. City of Blackduck*, 984 F. Supp. 1209 (D. Minn. 1997), the plaintiff EMT's on-call hours

were much more limited, the ambulance service as a whole received only five calls per

week on average, and while the plaintiff had to remain within certain geographical limits,

she was not required to respond within a certain time.  *Id.* at 1214–15, 1222.  Likewise,

*Sletten v. First Care Med. Servs.*, No. CIV. 98-2446 (RLE), 2000 WL 1196199 (D. Minn.

Mar. 20, 2000), does not support summary judgment, as it was decided after a bench trial and required the resolution of disputed factual issues after careful sifting of competing testimony. *Id.* at *9–12. Indeed, the trial judge observed that acting as a factfinder is "a role inimical to the Court's function on Summary Judgment" and that, if the case were before him on a motion for summary judgment, he would deny it. *Id.* at *15. In *Dickhaut v. Madison Cnty.*, 707 F. Supp. 2d 883 (S.D. Iowa 2009), the plaintiffs were part-time EMTs who could choose their own shifts and, for a substantial proportion of their shifts, did not get any calls. *Id.* at 885–86, 893–94. Finally, in *Burnison v. Mem'l Hosp., Inc.*, 820 F. Supp. 549 (D. Kan. 1993), the plaintiffs were notified when the first crew went on a call, a warning system that served to lessen the restrictions to which they were otherwise subject. *Id.* at 552, 554. In addition, the plaintiffs were called back, on average, less than twice during a 24-hour shift. *Id.* at 552, 554.

In short, each of these cases involves a different mix of a constellation of factors. Determining the merits is a complex exercise in weighing each factor, and what seem like minor factual distinctions can make all the difference. Without clear precedent indicating that one side or the other should prevail, a jury must determine how to weigh the relevant facts. *Skidmore*, 323 U.S. at 136 (explaining that it is not possible to "lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time"). The Court therefore denies both parties' motions for summary judgment on the issue of whether the EMTs' on-call time is working time.

### B.       Liquidated Damages under the FLSA

Employees who prevail on their FLSA claims may recover, in addition to their unpaid wages, "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b). It is well established that liquidated damages under the FLSA are considered compensatory and are the rule rather than the exception.  *See Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941–42 (8th Cir. 2008); *Broadus v. O.K. Indus., Inc.*, 226 F.3d 937, 943 (8th Cir. 2000).

The FLSA provides a limited defense to liquidated damages, however: "[I]f the employer shows to the satisfaction of the court" that it acted reasonably and in good faith, "the court may, in its sound discretion," eliminate or reduce liquidated damages.  29 U.S.C. § 260.  The employer bears the burden to show both subjective good faith and objective reasonableness, and "the burden is a difficult one."   *Chao*, 547 F.3d at 941–42 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)); *see also Chavez-DeRemer v. Alpha & Omega USA, Inc.*, No. 23-3170, 2025 WL 1096727, at *6 (8th Cir. Apr. 14, 2025) (noting "the high bar an employer must meet to defeat liquidated damages for violation of FLSA's overtime provisions").

Eighth Circuit case law indicates that establishing subjective good faith requires particularized evidence of the employer's actual attempts to determine its legal obligations. For example, in *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078 (8th Cir. 2000), the Eighth Circuit, relying principally on the jury's finding of willfulness, reversed the district court's finding of good faith.  *Id.* at 1084.  The Eighth Circuit described the evidence supporting the jury's finding of willfulness as follows:

9

> No defense witness testified as to how individual site managers were classified as exempt or non-exempt employees, or how Sandra Jarrett was classified at either of her site manager positions.  No defense witness contradicted, or attempted to explain, the testimony of two former site managers that they were told, categorically, by two regional supervisors, that ERC would not pay overtime—a generalization in clear conflict with the Policy Manual's recognition that this is a fact-intensive determination.

*Id.* at 1083.

Likewise, in *Walsh v. Alpha & Omega USA, Inc.*, 553 F. Supp. 3d 659 (D. Minn. 2021), *rev'd and remanded on other grounds*, 39 F.4th 1078 (8th Cir. 2022), Judge David S. Doty granted summary judgment in favor of the plaintiff on liability and rejected the employer's good-faith defense, explaining that the employer's "purported self-research and 'decades of legal consultation' are unsupported and indefinite, and, even if true, fail to show specific analysis under the FLSA." *Id.* at 674.  Although the Eighth Circuit reversed the grant of summary judgment on liability, it later affirmed an award of damages following a trial as well as Judge Doty's rejection of the good-faith defense (based on the earlier summary-judgment order).  *Chavez-DeRemer*, No. 23-3170, 2025 WL 1096727, at *6.

In contrast to *Jarrett* and *Walsh*, the Eighth Circuit has found good faith where there is detailed evidence of concrete steps that the employer took to comply with the FLSA.  *See Hultgren v. Cnty. of Lancaster, Neb.*, 913 F.2d 498, 509–10 (8th Cir. 1990).  In *Hultgren*, the municipal employer offered evidence that, following a Supreme Court decision that wage-and-hour standards apply to government employees, its executive director contacted the county attorney's office to obtain specific guidance on complying

10

with the FLSA.  *Id.* at 501.  The employer also offered detailed, concrete evidence that it relied on the specific guidance that it received.  *Id.* at 501-02.

North Memorial's evidence of its subjective good faith is much more akin to the generalized type of evidence found insufficient in *Jarrett* and *Walsh* than the specific evidence of good faith offered in *Holtgren*.  North Memorial offers generic evidence that it relied on advice from legal counsel; wage and hour law, caselaw, seminars, treatises, and other such material; and communications from advisors and state and federal regulators. (Doc. 160-14 at 15.)  But North Memorial does not offer any specifics about any of this guidance nor describe the content of any of the advice or guidance it received.  North Memorial also fails to identify who at North Memorial actually relied on any guidance and cites no evidence of any specific occasion on which anyone analyzed the issue on North Memorial's behalf.

North Memorial also cites evidence that its payroll team conducted yearly audits "to ensure we're paying our folks correctly."  Krone Dep. 19.  But the witness did not provide any detail about the audits or their results and did not know how they were documented or what kind of paperwork they generated.  *Id.* at 20–21.  The witness also asserted that North Memorial "would have" relied on legal counsel, guidance from the Department of Labor, case law, and "various publications," *id.* at 18, but again did not identify any instance on which counsel analyzed the issue or actually relied on any of these sources, nor did she provide any description of what these sources say.  This lack of specificity is insufficient to meet North Memorial's burden to show subjective good faith.  The Court therefore

11

grants Johnson's motion for summary judgment on North Memorial's good-faith defense to liquidated damages.

### C.    Willfulness

The general statute of limitations for FLSA claims is two years.  29 U.S.C. § 255(a). Where the employer's violation was willful, however, the limitations period extends to three years.  *Id.*  "A finding of willfulness requires behavior on the part of the employer that exceeds negligence; the employer must act knowingly or with reckless disregard of whether the contested conduct was prohibited."  *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (affirming finding of willfulness in a case brought under the Equal Pay Act, to which § 255(a) also applies).  Plaintiffs bear the burden of proof to show willfulness.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988) ("To obtain the benefit of the 3-year exception, the Secretary must prove that the employer's conduct was willful as that term is defined in both [*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)] and this opinion.").

In *Simpson*, the Eighth Circuit affirmed the jury's finding that the employer acted willfully based on evidence that, among other things, the employer's personnel policy treated men and women differently and a corporate officer and member of the employer's board of directors had remarked that men needed to be paid more than women.  *Id.* at 580. In *Jarrett*, there was similarly robust evidence of willfulness: both the plaintiff and another employee were told that they would not be paid overtime and the plaintiff's immediate supervisors instructed her to record only forty hours per week on her time sheets.  *Jarrett*, 211 F.3d at 1083.

Johnson argues that there is no evidence that North Memorial investigated its obligations under the FLSA.  Johnson also points out that, after an EMT complained to the Department of Labor, North Memorial began paying minimum wage for on-call hours and included them in calculating overtime.  At most, however, this evidence would establish negligence, which is insufficient to meet the willfulness standard.  *Simpson*, 441 F.3d at 580.  Unlike *Simpson* and *Jarrett*, here there is no positive evidence establishing that North Memorial knew or recklessly disregarded its obligations under the FLSA.  As discussed above, existing case law does not dictate a ruling in the EMTs' favor and North Memorial has a meritorious argument that the EMTs' on-call time was not governed by the FLSA.  As there is insufficient evidence of willfulness, the Court grants North Memorial's motion for summary judgment on this issue.

## III.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Partial Summary Judgment [Doc. 152] is **GRANTED IN PART and DENIED in part** as follows:

   a. The motion is **GRANTED** as to the issue of Defendant's 29 U.S.C. § 260 good-faith defense to liquidated damages.  That defense fails as a matter of law.

   b. The motion is **DENIED** in all other respects.

2.    Defendant's Motion for Summary Judgment [Doc. 157] is **GRANTED IN PART and DENIED IN PART** as follows:

a. The motion is **GRANTED** as to the issue of willfulness. Pursuant to 29 U.S.C. § 255(a), the applicable statute of limitations is two years.

b. The motion is **DENIED** in all other respects.

Dated: March 9, 2026                          /s/ Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge